# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAPHNE MYERS,                              )
                                           )
                    Plaintiff,             )
                                           )
          vs.                              )      Civil Action No. 3:25-cv-317
                                           )      Judge D. Brooks Smith
CREATIVE PULTRUSIONS                       )
LIFE INSURANCE PLAN, *et al.*,             )
                                           )
                    Defendants.            )


## MEMORANDUM and ORDER OF COURT

Matthew S. Myers died on September 27, 2023. For the next two years, his surviving spouse, Daphne Myers, attempted to collect the life insurance benefits she believed she was due. Stonewalled, she initiated this lawsuit against Matthew's former employer, Creative Pultrusions, Inc., as well as the Creative Pultrusions Group Life Insurance Plan, the Plan Administrator (collectively "Creative Pultrusions"), and UnitedHealthcare Specialty Benefits ("United") (the Plan's claims administrator and insurer). Her Complaint alleges three counts under the Employee Retirement and Income Security Act of 1974 (ERISA). United has moved to dismiss Count I, while Creative Pultrusions has moved to dismiss Counts II and III. For the following reasons, the Court will grant United's motion but deny Creative Pultrusions'.

## I.    BACKGROUND[1]

When Matthew commenced employment with Creative Pultrusions, the company sponsored a group life insurance plan through United. On August 30, 2019, Matthew waived coverage under the Plan with the understanding that he would "not have another opportunity to enroll until Open Enrollment or [the occurrence of] a qualifying event." (ECF No. 19-1 at 2). Consistent with that understanding, he waited until the next open enrollment period, around December 2020, and then "requested coverage" in the amount of $100,000. (ECF No. 3-3 at 1; ECF No. 3 ¶ 9).

At that point, Creative Pultrusions owed Matthew "fiduciary duties to ensure accurate enrollment, timely follow-through on any evidence-of-insurability (EOI), proper payroll deductions, and clear, accurate communications." (ECF No. 3 ¶ 10). But "Creative Pultrusions failed to run a competent enrollment/payroll/EOI process: deductions were not consistently taken[,] and [Creative Pultrusions] did not resolve the discrepancy or notify Matthew or [Mrs. Myers] in a timely, accurate manner."

---

[1] When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I "must accept all of the complaint's well-pleaded facts as true." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, while typically limited to the contents of the Complaint and materials appended thereto, I may consider documents that defendants attach to motions to dismiss if the documents are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Thus, because they are integral to and/or explicitly relied upon in Myers' Complaint, I also consider: (1) the operative and governing plan documents (ECF No. 34-1); (2) the adverse benefit determination letter that United issued (ECF No. 34-2); and (3) the waiver of coverage that Matthew executed. (ECF No. 19-1).

(*Id.* ¶ 11). Additional administrative defects grew apparent after Matthew's death, when, for "nearly two years," Creative Pultrusions failed to supply Mrs. Myers with the "claim instructions and plan documents" she requested. (*Id.* ¶¶ 12–13).

Eventually, Creative Pultrusions informed Mrs. Myers that she needed to file her claim with United. (*See* ECF No. 3-6 at 1). On September 11, 2025, she did just that. (*See id.*). In a letter dated September 25, 2025, United denied Mrs. Myers' claim on the grounds that Matthew "waived the election of Basic coverage in 2019." (ECF No. 34-2 at 2). Under the terms of the Plan, this adverse decision empowered Myers to "file a suit in a state or federal court provided" she "exhausted the procedures and complied with the timeframes for review of the . . . decision." (ECF No. 34-1 at 55). Such procedures require beneficiaries who "wish[] to have a denied claim reviewed" to send "a written request . . . to the address identified in the claim denial letter." (*Id.* at 56). The beneficiary must submit this request "within 60 days of the receipt of the claim denial notice." (*Id.*). Mrs. Myers acknowledges that she never submitted any such request. Instead, on September 25, 2025 (the same day United issued the denial letter), she initiated this lawsuit. (*See* ECF No. 3).

On January 26, 2026, Creative Pultrusions moved to dismiss Counts II and III. (ECF No. 18). On February 25, 2026, United moved to dismiss Count I. (ECF No. 33). Both motions are fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    ANALYSIS

Count I of Mrs. Myers' Complaint is brought against United and/or Creative Pultrusions Group Life Insurance Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B), and seeks "payment of the $100,000 benefit, plus prejudgment interest, and clarification that she is entitled to those benefits." (ECF No. 3 ¶¶ 17–20). Count II is brought against Creative Pultrusions, Inc., pursuant to 29 U.S.C. § 1132(a)(3) and seeks "appropriate equitable relief, including: (a) surcharge equal to the unpaid benefit and consequential losses; (b) equitable estoppel; (c) reformation to reflect Matthew's election as in-force at death; (d) injunctive relief to implement compliant procedures; and (e) declaratory relief confirming fiduciary breaches and the right to make-whole relief." (*Id.* ¶¶ 21–25). Count III is brought against the Plan Administrator, pursuant to 29 U.S.C. § 1132(c)(1), and seeks "a civil penalty of up to $110 per day from November 8, 2023 through the date the [Plan Administrator] . . . furnished" the documents Mrs. Myers' requested. (*Id.* ¶¶ 26–31). United has moved to dismiss

Count I, and Creative Pultrusions has moved to dismiss Counts II and III. I will address each motion in turn, granting the former and denying the latter.

### a. United's Motion to Dismiss

United seeks dismissal of Count I on the grounds that Mrs. Myers filed her Complaint without first "exhaust[ing] the Plan's mandatory review process." (ECF No. 35 at 1). Plan beneficiaries must "exhaust internal review before bringing a claim for judicial review under [29 U.S.C. § 1132(a)(1)(B)]." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013). Courts, therefore, dismiss Section 1132(a)(1)(B) claims if the pleadings conclusively establish that the plaintiff filed them in lieu of pursuing bona fide administrative review. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (affirming the District Court's dismissal of the plaintiff's ERISA claims because the plaintiff "failed to exhaust his administrative remedies"); *Scheider v. U.S. Steel Corp.*, 486 F. Supp. 211, 213 (W.D. Pa. 1980) (dismissing an ERISA claim for failure to "exhaust [] administrative procedures"); *Professional Orthopedic Associates, PA v. CareFirst BlueCross BlueShield*, No. 14-cv-4486, 2016 WL 1338597, at *5 (D.N.J. Apr. 5, 2016) (granting motion to dismiss ERISA claim where the plaintiff "failed to exhaust his administrative remedies"); *Zapiach v. Empire Blue Cross Blue Shield*, No. 17-cv-10179, 2018 WL 1838017, at *2 (D.N.J. Apr. 17, 2018) (dismissing ERISA claim because the plaintiff "failed to exhaust the administrative remedies available under the Plan"); *see also Lewis-*

*Burroughs v. Prudential Ins. Co. of Am.*, No. 14-cv-1632 2015 WL 1969299, at *4–5 (D.N.J. Apr. 30, 2015) (considering motion to dismiss ERISA claim on the grounds that the plaintiff did not sufficiently plead exhaustion of administrative remedies). The "exhaustion requirement is strictly enforced" but may be forgiven "when resort to the administrative process would be futile." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990). Further, the "exhaustion requirement is waived . . . when the participant has filed an administrative appeal from the denial of benefits, but the plan provider has failed to timely decide it." *Lewis-Burroughs*, 2015 WL 1969299, at *5.

Mrs. Myers admits that she did not exhaust her administrative remedies under the Plan, (*see* ECF No. 37 at 3), so, as to United, she can maintain Count I only if she "provide[s] a clear and positive showing of futility," *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002), or plausibly alleges that she "filed an administrative appeal . . . but [United] failed to timely decide it," *Lewis-Burroughs*, 2015 WL 1969299, at *5. She has accomplished neither.

She argues, first, that "further administrative review would have been incapable of providing relief" because United "had already taken a firm position denying benefits based on an alleged waiver, and the same entity responsible for the denial would have adjudicated any appeal." (ECF No. 37 at 5). But speculative recalcitrance is not a clear and positive showing of futility. *Cf. Berger*, 911 F.2d at

917 (affirming District Court finding of futility where a "company had adopted a policy of denying all applications" and a member of the Pension Board testified that once the company denied an application "any administrative appeal was futile"). Nothing in the record indicates that United stubbornly clung to adverse claims decisions when confronted with persuasive evidence of error. Nor did United fail "to comply with its own internal administrative procedures." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002). Mrs. Myers *hypothesizes* an office of rubber stamps and deaf ears, but she never tested that hypothesis. She never informed United of any "alleged defects" in Matthew's "purported waiver." (ECF No. 40 at 9). She also does not allege that she supplied United with the document reflecting Matthew's decision to opt into coverage in 2020. And without some proof of United's systemic refusal to consider this kind of new evidence on appeal, she cannot forgo administrative review in favor of a federal lawsuit. To do so undermines a key rationale of the exhaustion requirement: "preventing premature judicial intervention." *Id.* at 249 (citation modified).

Mrs. Myers also contends that "any failure to pursue [United's] internal appeal process was the result of plan-side nondisclosure and delay, rendering exhaustion unavailable or excused at the pleading stage." (ECF No. 37 at 5). But United acted promptly. Under the Plan, United had 90 days from the receipt of the life insurance claim to issue its initial decision. (ECF No. 34-1 at 56). It rendered that decision in

7

14 days, well within the applicable window. (ECF No. 40 at 6). Mrs. Myers then had 60 days to submit a written request for review. (ECF No. 34-1 at 56). Instead, she filed this lawsuit. She alleges she did this "solely to preserve her claim before the statute of limitations expired on September 27, 2025, two years after her husband's death." (ECF No. 37 at 4). But she could have preserved her claim and pursued mandatory administrative review simultaneously. Regardless, ERISA does not impose a 2-year limitations period on Section 1132 (a)(1)(B) claims. *See Syed v. Hercules Inc.*, 214 F.3d 155, 159 (3d Cir. 2000). In fact, ERISA includes no limitations period at all. Courts, therefore, borrow from "the most analogous state law claim." *Lutz v. Philips Elecs. N.A. Corp.*, 347 F. App'x 773, 776 (3d Cir. Oct. 8, 2009). In Pennsylvania, that "claim has a statute of limitations of four years." *Id.* (citation modified). To the extent the Plan modifies this limitations period, it still provides for up to *three* years to initiate a suit. (*See* ECF No. 34-1 at 17). So under no circumstances did United delay adjudication of Mrs. Myers's claim, nor did the timing of the response necessitate the premature filing of this lawsuit.

Because she did not exhaust her administrative remedies and cannot show futility or improper delay, Count I of Mrs. Myers' Complaint must be dismissed as to United.

### b. Creative Pultrusions' Motion to Dismiss

Creative Pultrusions moves for dismissal of both Counts II and III. It argues that Mrs. Myers may not pursue a claim under 29 U.S.C. § 1132(a)(3) (Count II) because that claim is capable of full remedy under § 1132(a)(1)(B) (Count I). (ECF No. 19 at 2). It further argues that Count III fails because 29 U.S.C. § 1132(c)(1) applies only to participants and beneficiaries, and Mrs. Myers is neither. At the pleading stage, these arguments cannot prevail.

### i. Count II is not capable of full remedy under § 1132(a)(1)(B).

29 U.S.C. § 1132(a)(3) provides:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

In her Complaint, Mrs. Myers alleges that "Creative Pultrusions failed to run a competent enrollment/payroll/EOI process," (ECF No. 3 ¶ 11) and that these breaches of fiduciary duty resulted in the "loss of the promised [life insurance] benefit and consequential harms," (*Id.* ¶ 24). Thus, pursuant to Section 1132(a)(3), Count II of Mrs. Myers' Complaint seeks:

> appropriate equitable relief, including: (a) surcharge equal to the unpaid benefit and consequential losses; (b) equitable estoppel; (c) reformation to reflect Matthew's election as in-force at death; (d) injunctive relief to

> implement compliant procedures; and (e) declaratory relief confirming fiduciary breaches and the right to make-whole relief.

(*Id.* ¶ 25). According to Creative Pultrusions, this claim cannot stand because it seeks relief: (1) capable of resolution under § 1132(a)(1)(B) and (2) not typically available in equity.

Section 1132(a)(3) is "a safety net, offering appropriate equitable relief for injuries caused by violations that [ERISA] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). A plaintiff may not invoke it to redress "breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims," *id.*, because Section 1132(a)(1)(B) already offers an adequate remedy to those misdeeds, *see Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007). But Section 1132(a)(3) is an avenue to remedy "other breaches of other sorts of fiduciary obligation[s]." *Varity*, 516 U.S. at 512. The question is whether the Section 1132(a)(3) claim adopts the veneer of equity to "repackage" a "'denial of benefits' claim as a claim for 'breach of fiduciary duty.'" *Id.* at 513. Such an approach would be gamesmanship and inappropriate because Section 1132(a)(1)(B) already offers a remedy for such a breach, and the relief sought—"specific performance of a past due monetary obligation"—"was not typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–11 (2002).

But Mrs. Myers' Section 1132(a)(3) claim is not merely "a claim for her pension benefits dressed in the cloak of equity." *Carr v. Jefferson Defined Benefit Plan*, No. 24-2574, 2025 WL 2888014, at *2 (3d Cir. Oct. 10, 2025) (citation modified). Rather, she "has alleged two separate and distinct injuries." *Gore*, 477 F.3d at 840. Count I posits that, although Matthew validly opted into the life insurance plan, United improperly refused to remit benefits. (ECF No. 3 ¶¶ 18–19). Count II, on the other hand, alleges that Creative Pultrusions breached its fiduciary duties by failing to consummate Matthew's decision to opt in, thereby leaving him uncovered. (*Id.* ¶¶ 22–25). Under the former theory, United incorrectly denied benefits. Under the latter, Creative Pultrusions' malfeasance thwarted Matthew's attempt to enroll, so United properly denied Mrs. Myers' claim, and the blame lies with Creative Pultrusions. Because that flavor of fiduciary misconduct is not compensable under Section 1132(a)(1)(B), Mrs. Myers' Complaint appropriately resorts to the "catch-all" provision to redress her grievance. This alternative theory of liability puts her in the same position as the plaintiffs in *Varity*, who the Supreme Court permitted to seek relief under 1132(a)(3) because they alleged that their employer/plan administrator breached a fiduciary duty that left them without recourse under Section 1132(a)(1)(B). *See Varity*, 516 U.S. at 512.

Confronted with this reality, Creative Pultrusions asks the Court to invert the familiar Rule 12(b)(6) standard. It maintains that Mrs. Myers cannot state a claim

11

for breach of *any* fiduciary duty because Matthew waived coverage and never revoked or modified that waiver. But that takes the facts alleged in the light most favorable to Creative Pultrusions, *the moving party. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("Courts must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.") (citation modified). The Complaint alleges that, "in or around December 2020, Matthew elected $100,000 in voluntary group life-insurance coverage." (ECF No. 3 ¶ 9). The document attached as "Exhibit B" appears to reflect that decision. (ECF No. 3-3). The allegation is, therefore, entitled to the presumption of truth. *See Santiago v. Warminster Tp.*, 629 F.3d 121, 133 (3d Cir. 2010) (treating a complaint's non-conclusory factual allegations as true when analyzing a motion to dismiss). And applying that presumption, it is no defense to say that Matthew waived coverage in 2019. Even assuming the authenticity of the initial waiver, the subsequent enrollment decision rendered Matthew a "participant" and Mrs. Myers a "beneficiary" under ERISA. *See* 29 U.S.C. § 1002(7), (8) (defining "participant" and "beneficiary). Creative Pultrusions owed fiduciary duties to each. *See* 29 U.S.C. § 1104. And, as alleged, it breached those duties when it failed to competently implement Matthew's election. That breach is compensable via Section 1132(a)(3), so Mrs. Myers may continue to pursue her claim under Count II.

### ii. Mrs. Myers is a "beneficiary" for purposes of Count III.

Much of the foregoing discussion also applies to Count III. Under 29 U.S.C. § 1132(c)(1), Plan administrators must "comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request." This applies to copies "of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). An administrator who shirks this responsibility "may in the court's discretion be personally liable to [a] participant or beneficiary in the amount of up to $100 a day." 29 U.S.C. § 1132(c)(1). Count III of Mrs. Myers' Complaint seeks imposition of these civil penalties because, although Mrs. Myers requested "the latest [summary plan description], plan instruments, insurance certificates/policies, and other documents under which the plan is established or operated," the Plan administrator either never furnished them or did not furnish them within 30 days of her request. (ECF No. 3 ¶¶26–29).

Creative Pultrusions does not deny that it failed to timely furnish the requested documents. Instead, it again argues that it had no obligation to furnish them because Matthew waived life insurance coverage, so Mrs. Myers was not a "beneficiary." Yet, for reasons already discussed, Mrs. Myers has plausibly pled that Matthew

opted into the group life insurance plan during the 2020 open enrollment period. Once he did so, Mrs. Myers became a beneficiary, and the Plan administrator was obligated to supply her with certain materials upon her request. She has plausibly alleged that she requested those materials and did not receive them within the statutorily prescribed 30-day timeframe. She may, therefore, maintain her claim under Section 1132(c)(1).

## IV.    CONCLUSION

For the foregoing reasons, the following order is entered:

### <u>ORDER OF COURT</u>

It is hereby ORDERED that United's Motion to Dismiss (ECF No. 33) is GRANTED, and Creative Pultrusions' Motion to Dismiss (ECF No. 18) is DENIED. Count I is dismissed as to United. The balance of the Complaint survives.

July 22, 2026

s/D. Brooks Smith

D. Brooks Smith
United States Circuit Judge
Sitting by Designation
